McCUNE v. ESSIG et ux.

(Circuit Court of Appeals, Ninth Circuit. May 4, 1903.)

No. 924.

1. REMOVAL OF CAUSES—FEDERAL QUESTION.

A suit by the daughter of a deceased homestead settler to recover an interest in the land, which after his death was patented to his widow under the homestead law, necessarily involves a construction of such law, which alone determines the right in which the widow took title, and is removable on that ground.

2. PUBLIC LANDS—HOMESTEADS—TITLE CONVEYED BY PATENT TO WIDOW.

A homestead settler has no devisable or descendible interest in the land until he has completed the term of residence required to entitle him to make final proof, and in case of his death before that time the patent to his widow, who completes the residence and makes the final proof, conveys the land to her absolutely, and no interest therein passes to the children of her deceased husband.

Appeal from the Circuit Court of the United States for the Eastern Division of the District of Washington.

For opinion below, see 118 Fed. 273.

Merritt & Merritt, for appellant.

Graves & Graves, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge. William McCune and his wife settled upon a quarter section of land in Lincoln county, Wash., under the homestead law of the United States, and on April 4, 1884, he filed, in the proper district land office, a claim to said land as a homestead. In the same year he died intestate, his widow, Sarah McCune, and his daughter, the appellant herein, surviving him. On December 17, 1889, Sarah McCune, then Sarah Donahue, made proof in the land office of full compliance with the requirements of the homestead law, and on March 6, 1891, a patent was issued to her therefor, granting the said land to her, "to have and to hold the said tract of land, with the appurtenances thereof, unto the said Sarah Donahue, and to her heirs and assigns, forever." Subsequently she conveyed the land to the appellees. The present suit is brought by her daughter to establish a claim to an undivided one-half interest in the land, on the theory that, although the patent was issued to her mother, the homestead was, by virtue of the law of Washington, community property, and William McCune, before making final proof and before completing his residence, had a vested, inchoate, or equitable title to the

¶ 2. See Public Lands, vol. 41, Cent. Dig. § 75.

homestead, and that upon his death his right or equity descended in equal shares to the widow and to the appellant according to the law of the state in which the land is situated. The Circuit Court held adversely to this contention.

On the appeal the question is presented whether the cause was removable from the state court to the Circuit Court of the United States. It is contended that no federal question is involved in the controversy, for the reason that, the patent having issued to the widow of William McCune, the only question involved is one of the construction of the statutes of descent of the state of Washington. We think the true controversy in this case concerns the construction to be given sections 2291 and 2292 of the Revised Statutes [U. S. Comp. St. 1901, pp. 1390, 1394]. The first of these sections prescribes the conditions under which land may be entered under the homestead law, and declares that "no certificate, however, shall be given or patent issued therefor until the expiration of five years from the date of such entry; and if at the expiration of such time, or at any time within two years thereafter, the person making such entry; or if he be dead, his widow; or in case of her death, his heirs or devisee; or in case of a widow making such entry, her heirs or devisee, in case of her death, proves by two credible witnesses that he, she, or they have resided upon or cultivated the same for the term of five years immediately succeeding the time of filing the affidavit, and makes affidavit that no part of such land had been alienated except as provided in section twenty-two hundred and eighty-eight, that he, she, or they will bear true allegiance to the government of the United States; then, in such case, he, she, or they, if at that time citizens of the United States, shall be entitled to a patent as in other cases provided by law." Section 2292 further provides: "In case of the death of both father and mother, leaving an infant child or children under twenty-one years of age, the right and fee shall inure to the benefit of such infant child or children." The statute expressly authorizes the issuance of the patent to the widow of the deceased homestead settler. It makes no provision for the children of such settler, and in its terms contains no recognition of any right initiated by him. The question presented is whether or not the widow was a donee in her own right of the land from the United States. If she were such donee, the statutes of the state of Washington were powerless to divest her of her interest or to charge with a trust the title so patented to her. The whole case turns on the construction of the homestead act, and clearly exhibits, in our opinion, ground for removing the cause to a court of the United States. The law of the state of Washington governs the descent of lands lying within the state, but the question here is whether there had been any descent of land. That question depends on the nature of the estate which the widow of William McCune took in the land by virtue of her compliance with the homestead law, and the patent which issued to her.

Counsel for the appellant rely upon Gold Washing & Water Co. v. Keyes, 96 U. S. 199, 24 L. Ed. 656; Romie et al. v. Casanova, 91 U. S. 379, 23 L. Ed. 374; McStay et al. v. Friedman, 92 U. S. 723, 23 L. Ed. 767; Hoadley v. San Francisco, 94 U. S. 4, 24 L. Ed. 34;

Blackburn v. Portland Gold Mining Co., 175 U. S. 571, 20 Sup. Ct. 222, 44 L. Ed. 276—as supporting the doctrine that, after the United States has parted with its title to land, any dispute concerning the same which does not bring in question the validity of the grant presents no federal question, and they assert that in this case they make no question of the validity of the grant to the widow of William McCune, but they contend that the question whether she took the beneficial interest as well as the legal title depends upon the effect to be given to the state statutes, and not upon the acts of Congress. None of the decisions so cited applies to the case which we have before us. The case chiefly relied upon is Hoadley v. San Francisco. In that case the grant was of the right and title of the United States to lands within the corporate limits of the city of San Francisco. It was a grant to the city and to its successors for certain beneficiaries. Hoadley claimed to be one of the beneficiaries, and the court said that the question involved "did not arise under the laws of the United States, but under the ordinances of the city as ratified by the act of the Legislature." In that case the trust was expressed in the grant. The only question before the court was, who were the beneficiaries? We agree with the Circuit Court that an apt rule is found in the opinion of the Supreme Court in the case of Wilcox v. McConnell, 13 Pet. 517, 10 L. Ed. 264, in which the court remarked:

"We hold the true principle to be this: that whenever the question in any court, state or federal, is whether a title to land which had once been the property of the United States has passed, that question must be resolved by the laws of the United States; but that whenever, according to those laws, the title shall have passed, then that property, like all other property in the state, is subject to the state legislation, so far as that legislation is consistent with the admission that the title passed and vested according to the laws of the United States."

The Supreme Court entertained jurisdiction of similar cases in Bernier v. Bernier, 147 U. S. 242, 13 Sup. Ct. 244, 37 L. Ed. 152, and Hutchinson Investment Co. v. Caldwell, 152 U. S. 65, 14 Sup. Ct. 504, 38 L. Ed. 356. We find no error in the ruling of the Circuit Court in refusing to remand the cause to the state court.

Nor do we find error in the conclusion which was reached by the Circuit Court on the merits of the case. The estate granted to a homestead settler is granted on conditions precedent. These conditions are residence for the required time, cultivation, and final proof. Until all of these conditions are complied with, the law gives him no more than the right of possession. It provides that, in case of his death before the completion of the conditions, his widow shall have all the rights which he would have had. His right is extinguished by his death, and she, in virtue of the fact that she is his widow, is designated as the donee of the land. The statute provides for the rights of the children only in case of the death of both father and mother before the final proof and declares that the right and fee shall inure to the benefit of such children. In Bernier v. Bernier, 147 U. S. 246, 13 Sup. Ct. 244, 37 L. Ed. 152, the court held that if the homestead entryman die a widower, without acquiring patent, the right to complete the proofs and acquire the patent passes to all his children, as well to those who are adults as to those who are infants. That conclusion was reached

by construing together both section 2291 and section 2292. In the course of the opinion the court remarked that the object of the sections in question was "to provide the method of completing the homestead claim and obtaining a patent therefor, and not to establish a line of .descent or rules of distribution of the deceased entryman's estate." This expression of the opinion is relied upon by the appellant as authority for the contention that the title so granted under the homestead law was not intended to be free from the control of the state statutes of descent, but we find in it no such meaning. The court in that case recognized the right of all the surviving children of the entryman to share equally in the homestead, but so held, not out of consideration of a state statute of descent, but on account of the meaning of the two sections so quoted from the homestead law; in other words, the court applied and gave force only to the homestead law as it was expressed, and very correctly observed that it was not the purpose of the homestead law to establish a line of descent or rule of distribution, but it was to determine who were the grantees of the government and who were entitled to receive the patent therefor.

The case of Hall v. Russell, 101 U. S. 503, 25 L. Ed. 829, is, we think, directly in point. That was a case which involved the construction of the donation act, an act in which the terms of the grant are much stronger than in the case of the homestead law, the language thereof being: "There shall be, and hereby is, granted;" the grantee being any qualified settler or occupant of the public lands "who shall have resided upon and cultivated the same for four consecutive years, and shall otherwise conform to the provisions of this act." It further provided that, if a settler died before the expiration of the required four years of continued possession, all his rights should descend to his heir at law, including his widow. The court held that, until such settler was qualified to take, there was no actual grant of the land, and that if such a settler should die after a residence thereon of less than the required four years he had no devisable interest therein.

The appellant invokes the doctrine of relation as it is expressed in Shepley v. Cowan et al., 91 U. S. 330, 23 L. Ed. 424. In that case the court held that where a state seeks to sell land as part of the lands included in a grant to it, and a settler seeks to acquire a right of preemption to the same land, the party taking the first initiatory steps, if the same have been followed up to patent, acquires the better right, and that the patent relates back to the date of the initiatory act and cuts off all intervening claims. That doctrine has no application to the facts of the present case. There were no rival claims to the land which was included in the homestead which was granted to the widow of William McCune. Her right was not adverse to that of her husband. By virtue of the fact that both were settlers on the land for the purpose of obtaining a homestead, and her husband died before the conditions of the grant were complied with, she became the donee of the title. Her husband had nothing to which the doctrine of relation could apply.

In the case of Shepley v. Cowan the court referred to its previous decision in Gibson v. Chouteau, 13 Wall. 100, 20 L. Ed. 534, where the doctrine of relation was thus defined:

"By the doctrine of relation is meant that principle by which an act done at one time is considered by a fiction of law to have been done at some antecedent period. It is usually applied where several proceedings are essential to complete a particular transaction, such as conveyance or deed. The last proceeding which consummates the conveyance is held, for certain purposes, to take effect by relation as of the day when the first proceeding was had."

Of what avail would it be to the appellant in this case to invoke that doctrine, and to assert that the patent which issued to the widow of McCune took effect by relation at the time when the settlement was made by him? Conceding that it relates back to, and takes effect at, that date, it can nevertheless detract nothing from the effect of the widow's title. Her title, as well, relates back to the initiatory act, and for her benefit only, and not for the benefit of the heirs of the deceased entryman. McCune never received a grant from the United States, nor acquired any interest in the land which could descend to his heirs. The Supreme Court of Washington has never applied the doctrine of relation to a case such as that which is now under consideration, nor has that court held the land acquired under the homestead laws of the United States to be community property in any case where the husband and wife resided thereon for a shorter time than the period required by those laws in order to acquire title.

In Kromer v. Friday, 10 Wash. 621, 39 Pac. 229, 32 L. R. A. 671, Kromer had made an entry upon land of the United States under the homestead act, and settled on the same, together with a woman whom he married after he had made final proof and received the final certificate, but before the issuance of the patent. It was held that the patent vested the title in the community, but the court ruled in that case that the fact that the marriage ceremony was performed under those circumstances was not proof that the settlers had not been married at the time of the settlement.

In Bolton v. La Camas Water Co., 10 Wash. 246, 38 Pac. 1043, the husband and wife established a homestead and lived thereon six years, when the wife died. Final proof was made later by the husband, and patent issued to him. The husband thereafter married a second wife. It was held that the husband, upon the issuance of the patent, took the full legal title, and upon his conveyance of the land to a grantee, who was ignorant of the equities of the first wife's heirs, both the legal and equitable titles would pass.

In Ahern v. Ahern et al. (recently decided by the Supreme Court of Washington) 71 Pac. 1023, it appeared that Ahern and his wife made a homestead entry, lived thereon, and complied with the rules and regulations relating to homesteads, for more than six years. After the wife's death the husband made final proof, and subsequently received a patent. It was held that, the equitable title having vested in the community before the wife's death, the legal title also vested in the community, and the court affirmed the rule in Kromer v. Friday, that land so acquired is taken by purchase by reason of the settlement and improvements thereon in which both husband and wife participated, and is consequently community property.

In Harris v. Harris, 71 Cal. 314, 12 Pac. 274, an unmarried woman after acquiring the initiatory right to pre-empt certain public land of the United States, married, and during her marriage paid the gov-

ernment price for the land, and received a patent therefor. It was held that the property so acquired became her separate estate, and was not community, and this irrespective of the fact that the money may have been paid out of the community property. The court said:

"Can the husband say that he obtained an interest in the pre-emption claim prior to the certificate of purchase by reason of the payment with his consent of money of which he had the control? Such a claim would seem to be invalid, because the express or implied agreement that he should have such an interest would be in fraud of the United States statute."

In Labish v. Hardy, 77 Cal. 327, 19 Pac. 531, it was held that a joint occupancy by husband and wife of land in the town of Santa Cruz, which terminated by the death of the wife 10 years before the act of Congress to quiet title to lands in said town, approved July 23, 1866 (14 Stat. 209, c. 211), would not constitute the land community property as against the grant made by the town to the husband as a bona fide occupant at the time of the passage of the act.

We find no error in the rulings of the Circuit Court. The judgment is affirmed.